UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK) PLC,

    *Plaintiff*,

                       CASE NO. 08-CV-01851-T-17-TBM

vs.

YELLOW FIN 36 LLC *et al*,

    *Defendants*,

_____/

### PLAINTIFF'S NOTICE OF FILING UNSWORN AFFIDAVIT

COMES NOW the Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, by and through its undersigned attorneys and files herewith the unsworn affidavit of Beric Anthony Usher in support of Plaintiff's Motion for Summary Judgment.

Dated:    December 31, 2009

                          BANKER LOPEZ GASSLER, P.A.
                          Attorneys for Plaintiff
                          501 East Kennedy Boulevard
                          Suite 1500
                          Tampa, Florida 33602
                          Tel (813) 221-1500
                          Fax (813) 222-3066

                By:   /s/ Allen von Spiegelfeld____
                     ALLEN VON SPIEGELFELD, ESQ.
                     FLA. BAR NO. 256803

1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of December, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to each of the following:

Steven T. Wittmer, Esq.
Wittmer & Linehan, PLLC
2014 Fourth Street
Sarasota, Florida 34237

BANKER LOPEZ GASSLER, P.A.
Attorneys for Plaintiff
501 East Kennedy Boulevard
Suite 1500
Tampa, Florida 33602
Tel (813) 221-1500
Fax (813) 222-3066

By: /s/ Allen von Spiegelfeld
ALLEN VON SPIEGELFELD, ESQ.
FLA. BAR NO. 256803

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK) PLC,

      *Plaintiff,*                  CASE NO. 08-CV-01851-T-17-TBM

         v.

YELLOW FIN 36 LLC, *et al*,          AFFIDAVIT IN SUPPORT OF
                                 PLAINTIFF'S MOTION FOR
      *Defendants.*          SUMMARY JUDGMENT
_____/

COUNTY OF WEST YORKSHIRE    )
                              )   ss:
UNITED KINGDOM               )

      B.A. Usher, being duly sworn, deposes and says:

      1.   My name is B.A. Usher, and I reside at

in the United Kingdom. Beginning in 1993, I was employed at T.L. Dallas, and then at T.L. Dallas (Special Risks) Ltd., ever since that company's formation in 1999. As Managing Director and Senior Underwriter for T.L. Dallas (Special Risks) Ltd., I was responsible for the entire department and for all personnel who were involved in the yacht & pleasure boat account, and the small commercial craft account, which the company wrote on behalf of Great Lakes Reinsurance (UK) plc during the time that Policy No. 200/658/75867 and then Policy No. 200/658/94457 and 200/658/107786 were issued to Yellow Fin 36 LLC.

      2.   In 2008, the principals in Osprey Special Risks Ltd. acquired the interests of the T.L. Dallas Group in an amicable buy-out and Osprey now functions as a new and independent entity

1

which is the exclusive marine underwriting agency offering marine insurance policies on behalf of Great Lakes Reinsurance (UK) plc.

3.   My duties both at the present time with Osprey Special Risks Ltd., and also with T.L. Dallas (Special Risks) Ltd., included making the final determination as to whether and on what terms marine insurance coverage will be agreed to with respect to any particular risk that is submitted by a broker to T.L. Dallas (Special Risks) Ltd. However, at all times material hereto, I have employed several individuals within the Underwriting Department whose role it is to assist me by handling Quote requests and by ultimately issuing the actual policies where the material facts as disclosed in the application materials make it quite clear that the risk being proposed falls squarely within the terms of a set of written underwriting and rating guidelines which I have prepared and provided to these individuals. Liam Gilhooly has been an underwriter assisting me with these routine tasks since October 1, 2005.

4.   I have inspected and I am quite familiar with the application materials which are contained in the Underwriting File which we maintain here in Ilkley, which materials were provided to us via Atlass Insurance group of Florida, Inc. The latter is a licensed surplus lines broker specializing in working with other brokers to obtain policies of marine insurance. The offices of Atlass Insurance group are located in Fort Lauderdale, Florida.

5.   In order to prepare this sworn affidavit, I have also had occasion to read the transcripts of the recorded statements

2

provided to Nautilus Investigations by Michael McNelis, David Luria and Nicholas Melone as part of the post-incident investigation, as well as the transcripts of the depositions that Messrs. McNelis, Luria and Melone gave on November 18, 2009.

6. My affidavit is based upon my review of these documents and also upon my personal knowledge of our underwriting practices, with special reference to our written underwriting and rating guidelines.

7. At all times relevant hereto, T.L. Dallas (Special Risks) Ltd. was the authorized underwriting and claims handling agent for Great Lakes Reinsurance (UK) plc as regards Policy No. 200/658/75867, 200/658/94457 and 200/658/107786. As the authorized underwriting agent, T.L. Dallas (Special Risks) Ltd.'s role was to receive and to then evaluate applications for the marine insurance coverage that we were authorized to write. T.L. Dallas (Special Risks) Ltd. would then either issue a quote to the surplus lines broker on the basis of the information contained in the application and any supporting materials, or else T.L. Dallas (Special Risks) Ltd. would refuse to issue a quote and would thereby reject an application for marine insurance coverage.

8. Such applications would normally be forwarded to our offices via e-mail and telefax from the various surplus lines insurance brokers located all around the United States with which we had established business relationships. As noted, in the case of Yellow Fin 36 LLC, all direct communications were with Atlass Insurance group, a Fort Lauderdale-based, Florida-licensed surplus

3

lines broker which was acting on behalf of Yellow Fin 36 LLC.

9.   As one of the largest and busiest yacht and pleasure boat insurance facilities in the United Kingdom, offering marine insurance coverage with Great Lakes Reinsurance (UK) plc, amongst others, T.L. Dallas (Special Risks) Ltd. in 2006, 2007 and 2008 maintained relationships with as many as one hundred sixty-five (165) different surplus lines insurance brokers located throughout the United States.

10.   The role of these surplus lines insurance brokers is to submit to us applications and requests for quotations on prospective policies of marine insurance. Since we have provided it to them, these brokers will have in their possession the policy language that our insurance policies will contain, and they will also have our application forms. The applications are completed sometimes with the assistance of the broker, and then via the broker are e-mailed or faxed to our facility in the United Kingdom for our review and underwriting decision.

11.   In this particular matter, it was on or about April 27, 2006 Lorrie Nero, a broker employed at Atlass, e-mailed us an unsigned and only partially completed two (2) page application seeking a Quote for a marine insurance policy on a 2005 36 ft Yellow Fin power vessel that had apparently been recently purchased for $200,000.00. It was on the basis of the information disclosed in this unsigned and partially completed application, identifying Yellow Fin 36 LLC as the owner, and Michael McNelis, David Luria and Nicholas Melone as the only operators, that T.L.

4

Dallas (Special Risks) Ltd. made the decision as to whether or not we would respond with a quote for a particular type of policy, what that quote or premium will be, the type of policy that we might offer, and other terms.

12. At the time of the submission of Yellow Fin 36 LLC's application and supporting materials, in April of 2006, T.L. Dallas (Special Risks) Ltd. had established and was enjoying a relationship with Atlass Insurance group in which that Florida-based marine insurance broker was sending us a regular flow of applications from prospective insureds such as Yellow Fin 36 LLC and Messrs. McNelis, Luria and Melone.

13. Atlass is a Florida-licensed surplus lines broker authorized under Florida state law to broker marine insurance on behalf of Florida residents such as Yellow Fin 36 LLC and McNelis, Luria and Melone.

14. The unsigned and partially completed application illustrated that another broker, Greg Jones of Christi Insurance Group, was also involved on behalf of the prospective insured, being listed on the application as the "Producer."

15. Knowing that Atlass Insurance Group was the broker with the Florida surplus lines license, it was apparent that Mr. Jones and Christi Insurance Group was the marine insurance broker with which McNelis, Luria and Melone had had direct or personal contact. Mr. Jones would have chosen to go to Atlass Insurance Group in order to have the latter's assistance in seeking a marine insurance policy from the UK Market.

16.    In the marine insurance industry, the local broker that has the direct or personal contact with an insured is referred to as the "retail broker," while the broker that the latter goes to for assistance in approaching a particular source or market is referred to as the "wholesale broker." So in this situation, Greg Jones of Christi Insurance Group was the retail broker that McNelis, Luria and Melone dealt with directly. Jones in turn went to Atlass Insurance Group, which was therefore the wholesale broker.

17.    Atlass Insurance Group has never at any time acted as an agent for T.L. Dallas (Special Risks) Ltd. or for Great Lakes Reinsurance (UK) plc. Atlass Insurance Group has never at any time had any authority to bind either T.L. Dallas (Special Risks) Ltd. or any of the various marine insurance companies and/or underwriters on behalf of which T.L. Dallas (Special Risks) Ltd. was authorized to act.

18.    No surplus lines broker is or ever has been authorized to bind either T.L. Dallas (Special Risks) Ltd. or Great Lakes Reinsurance (UK) plc in any manner.    Authority to bind on any prospective risk must come from T.L. Dallas (Special Risks) Ltd. and this authority is transmitted to the insured's broker(s) only after we have reviewed and approved the application submissions which have been provided to us by these entities.

19.    In this particular matter, the unsigned and partially completed application, seeking a marine insurance policy for Yellow Fin 36 LLC on its newly purchased 2005 36 ft Yellow Fin

6

power vessel alleged to have a value of $200,000.00, was submitted to us by Atlass Insurance Group. As stated above, Atlass was a duly licensed surplus lines broker doing business in Fort Lauderdale, Florida and specializing in obtaining marine insurance coverage for other brokers such as Jones and Christi who were working on behalf of individual clients but who for one reason or another were unable to approach us directly or by themselves.

20.    There was never any agreement between T.L. Dallas (Special Risks) Ltd. and Atlass Insurance Group, beyond the agreement that these brokers could refer business to us if they felt it was in their clients' interests. Like every other broker, Atlass Insurance Group was completely free to approach any other markets with which they were doing business in an effort to obtain satisfactory or even superior terms for the insurance coverage being sought on behalf of their client.

21.    The only thing that Atlass Insurance Group was in fact authorized to do in the instant matter was to forward to T.L. Dallas (Special Risks) Ltd. a request for quotation, and to submit a fully completed application form and other supporting material. Such a document was indeed provided to us and review of the material information contained in the application bearing the signature of Michael McNelis resulted in the subsequent issuance of Policy No. 200/658/75867 with an effective date of May 9, 2006.

22.    As noted, with respect to Atlass Insurance Group, other brokers working directly on behalf of individual insureds such as McNelis, Luria and Melone would approach Atlass in order to obtain

7

marine insurance for their clients. Atlass might then approach our marine insurance facility to seek insurance coverage, in precisely the same manner as any of the numerous other brokers for which T.L. Dallas (Special Risks) Ltd. constitutes a potential market.

23. At no time, either prior to or since the submission of the application material that resulted in issuance of Policy No. 200/658/75867, has either T.L. Dallas (Special Risks) Ltd. or Great Lakes Reinsurance (UK) plc had any relationship whatsoever with Greg Jones or with Christi Insurance Group. Neither I nor any other individual at either T.L. Dallas (Special Risks) Ltd. or at Great Lakes Reinsurance (UK) plc has ever had any contact or communication, written or verbal, of a business or commercial nature with any individual employed by or in any manner associated with Christi Insurance Group. As the "retail broker" having the original contact or relationship with McNelis, Luria and Melone, Greg Jones would have had to go to Atlass Insurance Group and would have had to request the latter's services in order to obtain a marine insurance policy from T.L. Dallas (Special Risks) Ltd.

24. As noted, our first communication with regard to Yellow Fin 36 LLC was on April 27, 2006 when the broker at Atlass sent us the application form on behalf of Yellow Fin 36 LLC seeking to obtain what is termed a Quote.

25. A request for a Quote is an inquiry from a broker with regard to whether T.L. Dallas (Special Risks) Ltd. would be willing to offer a policy of marine insurance on behalf of Great Lakes Reinsurance (UK) plc, and if so, the most salient and basic

8

terms for that policy and the premium that would be charged.

26.   Such  Quotations  are  routinely  solicited  from  T.L.
Dallas (Special Risks) Ltd. by surplus lines brokers using either
partially  completed  application  forms,  or  sometimes  their  own
worksheets  on  which  the  broker  has  written  down  the  material
information obtained as a result of its direct communications with
the  prospective  assured  or  direct  communications  with  the  retail
broker.

27.   The  unsigned  and  partially  completed  application  form
submitted  by  Yellow  Fin  36  LLC's  brokers  on  April  27,  2006  was
quite unremarkable. It indicated, *inter alia*, that the vessel was
formally owned by a limited liability company, and that while the
said  LLC  would  therefore  be  the  prospective  insured,  it  was
Michael  McNelis,  David  Luria  and  Nicholas  Melone  who  were
disclosed as the persons who would be the vessel's operators.   The
vessel was described as a new 2005 36 ft Yellow Fin power vessel,
with a maximum speed of 55 mph, three (3) Mercury engines rated at
275  hp  each,  a  purchase  price  and  insured  value  of  $200,000.00,
and  which  was  going  to  be  operated  in  the  waters  of  Florida  and
the Bahamas. McNelis, Luria and Melone were each represented to us
as  possessing  15  years  of  boating  experience,  and  each  was
represented  as  having  previously  been  the  owner  of  various
familiar types of pleasure craft. The proposed vessel's main
mooring/storage location was represented as being at what appears
to be a residence located in Sarasota, Florida.

28. On the second page of the partially completed and unsigned application a series of questions was presented for response by the prospective insured, one of which asked "Have you or any named operator been involved in a marine loss in the last 10 years (insured or not)?" That question was answered with a "NO."

29. Because the vessel was a fairly common type of pleasure craft, purchased new and with a hull value well within the parameters of our program, with proposed navigational limits falling squarely within the locations that our program specialized in, and with three (3) prospective operators whose experience in boat ownership and operation was extensive, and where all operators reported no marine losses over the previous 10 year period, Mr. Gilhooly was able to deal with the underwriting issues completely on his own and with no input from me. Mr. Gilhooly would have been required to bring the Yellow Fin 36 LLC risk to my attention, for my independent underwriting evaluation, only if prior losses had been disclosed, the vessel was capable of a speed exceeding 70mph, the prior policy had been "non-renewed", or the vessel was engaged in commercial activity.

30. The next day, April 28, 2006, without any input or direction from me, Liam Gilhooly sent a Quotation back to Atlass Insurance Group via e-mail indicating the terms on which T.L. Dallas (Special Risks) Ltd. would agree to issue a Great Lakes Re marine insurance policy to Yellow Fin 36 LLC. A premium in the amount of $5,255.00 was to be charged for the coverage. Amongst

several other matters, we required a "satisfactory application form."

31. No response was immediately forthcoming from Atlass, but then on May 9, 2006 Mr. Gilhooly received a second Quote request when the broker sought limits for liability coverage which were substantially higher than those initially sought at the time of the April 27, 2006 Quote request. Mr. Gilhooly responded with a somewhat revised Quote at a premium of $5,510.00 which was acceptable to the broker and he therefore issued a Temporary Cover Note for Policy No. 200/658/75867.

32. On June 6, 2006, Atlass provided us with a completed application form on which appeared the signature of Michael McNelis, one of the disclosed operators and a principal in Yellow Fin 36 LLC, and also that of Greg Jones, the retail broker from Christi Insurance Group.

33. The now signed and fully completed application provided what we took to be full disclosure of all the material facts with regard to the risk that was being proposed. Satisfied with the disclosure and after reviewing and evaluating the risk, Mr. Gilhooly, acting on behalf of T.L. Dallas (Special Risks) Ltd., agreed to issue Great Lakes Re's marine insurance Policy No. 200/658/775867 affording Hull & Machinery coverage on the 2005 36 ft Yellow Fin power vessel in the agreed amount of $200,000.00 for the period from May 9, 2006 through May 9, 2007.

34. Just like the unsigned application that had been submitted by the brokers in order to elicit our Quotation, on the

11

second page of the duly signed application there that same series of questions presented for response by the prospective insured. One of those questions again asked "Have you or any named operator been involved in a marine loss in the last 10 years (insured or not)?" Once again, that question was answered with a "NO."

35.  As noted, Mr. Gilhooly was able to deal with the underwriting issues completely on his own and with no input from me. In order to set the premium that would be charged for Policy No. 200/658/75867, Mr. Gilhooly made reference to a portion of the written underwriting and rating guidelines which I had prepared and provided to him and the other persons working under my supervision in the Underwriting Department at T.L. Dallas (Special Risks) Ltd. Under the heading of **Other Adjustments**, the said written guidelines required that the underwriter allow a ten percent (10%) credit where the prospective insured was able to demonstrate "10+ Years Operating experience (with ownership) and Loss Free."

36.  Because the application materials submitted by Atlass, prepared with the assistance of Mr. Jones and signed by both Jones and Mr. McNelis represented that none of the three prospective operators had a marine loss over the course of the previous 10 years, the premium that Mr. Gilhooly charged was lower than it would have been in the event any of the operators had disclosed a marine loss. The premium that Mr. Gilhooly charged was $5,510.00

12

whereas the premium would have been $ 6,800.00 if there had been disclosure of any prior marine loss on the part of any operator.

37.   Where any Quote request or completed application does disclose that one or more of the prospective operators has had a marine loss within the previous 10 year period, Mr. Gilhooly and my other underwriters ("Assistant Underwriters"?) are required to bring that particular matter to my personal attention in order to allow me, as the Senior Underwriter, to review and evaluate the entire risk that is being proposed. That is because, as a reasonable and intelligent marine underwriter, I am compelled to take into consideration the particular facts and circumstances of any prior marine loss when determining whether to accept a proposed risk at all, or at the every least, in order to calculate the premium that must be charged in order to properly reflect the potentially increased hazard and increased level of risk.

38.   There may be circumstances where a prior marine loss would not impact my ultimate underwriting decision, or where a prior marine loss would not even cause me to charge a higher premium, such as a loss caused by what might be termed an "act of God" such as a lightning strike, or where the fault of another boater was the cause of the incident. However, any prior incident involving another vessel's theft, or its removal, or an unexplained disappearance or taking from its dock or the boatlift on which it had been stored would always be absolutely critical to me or to any other reasonable and intelligent marine underwriter because it would indicate at least some increased

13

risk of a similar event occurring. It is on the basis of such past events that an informed underwriting decision is made.

39. Near the end of that first year's policy, on or about March 29, 2007, Mr. Gilhooly sent a Renewal Quotation and in response Atlass submitted a signed Renewal Questionnaire which represented that there were no material changes to the risk. Accordingly, without having to bring the renewal to my attention, Mr. Gilhooly agreed to issue Great Lakes Re's Policy No. 200/658/94457. That policy afforded the same coverage Yellow Fin 36 LLC for the period from May 9, 2007 through May 9, 2008.

40. Near the end of the second year's policy, on or about March 5, 2008, Mr. Gilhooly again sent a Renewal Quotation, only this time he indicated that he required a reiteration of certain specific material information concerning each of the three (3) operators. Amongst that specific information required by Mr. Gilhooly was disclosure of the operators' "10 year loss record." Responding to our Renewal Quotation Atlass submitted a signed Renewal Questionnaire which represented that there were no material changes to the risk, and also expressly reiterating the original application's previous "NO" with regard to whether any operator had had a marine loss in the 10 year prior to 2008. Accordingly, again without having to bring the renewal to my attention, Mr. Gilhooly agreed to issue Great Lakes Re's Policy No. 200/658/107786, affording for the third year the same coverage Yellow Fin 36 LLC for the period from May 9, 2008 through May 9, 2009.

41.   In the investigation that T.L. Dallas (Special Risks) Ltd.'s Claims Manager caused to be carried out in the wake of the theft of the vessel alleged to have taken place on or about June 14, 2008, and now as revealed in Mr. Melone's recorded statement and in his deposition, we ascertained that he had in fact suffered a marine loss when another vessel that he owned was perhaps stolen, perhaps removed by vandals, perhaps mysteriously disappeared, or in some fashion was taken from its dock or from the boatlift on which it had been stored.

42.   As noted, in the incomplete and unsigned application which had been submitted in order to obtain our Quotation, Yellow Fin 36 LLC's brokers had denied that any operator had a prior marine loss. Then, in the completed and signed application submitted by his brokers, Mr. McNelis himself had denied any marine prior losses.

43.   Had there been disclosure at any time of the incident described by Mr. Melone in his recorded statement and in his deposition, Mr. Gilhooly would have been prohibited from granting the "Loss Free" credit which he did in fact give only because this material information concerning loss history was withheld.

44.   In addition, disclosure of the incident described by Mr. Melone in his recorded statement and in his deposition would have compelled Mr. Gilhooly to bring the entire risk and all application materials to me for my own independent evaluation as the Senior Underwriter in this program. Had there been disclosure, at an time, of the incident described by Mr. Melone in his

15

recorded statement and in deposition, I would have insisted upon
further disclosure with regard to the specific security
precautions were being taken in order to prevent a theft, or
disappearance, or taking of the 2005 36 ft Yellow Fin power
vessel, and I would then have assessed a further ten percent (10%)
loss-record debit. So in addition to no ten percent (10%) "Loss
Free" credit, I would have then added a further ten percent (10%)
increase, what is termed a "loading," and the premium that would
have been set would actually have been twenty percent (20%) higher
than the figure that was actually charged to Yellow Fin 36 LLC in
each of the three (3) years that a Great Lakes Re policy was in
force.

45.   Disclosure of the incident described by Mr. Melone in
his recorded statement and in his deposition would have caused us
to charge a higher premium for the original Policy No.
200/658/75867, reflecting his true marine loss history. Disclosure
of the incident described by Mr. Melone in his recorded statement
and in his deposition would have caused us to charge a higher
premium for the renewal Policy No. 200/658/94457 and renewal
Policy No. 200/658/107786, reflecting his true marine loss
history.

46.   Theft of vessels such as the 2005 36 ft Yellow Fin
power vessel is rampant throughout the state of Florida, and we
routinely require thorough disclosure of security measures in
place to prevent another claim when we are asked to issue a
Quotation where there has been disclosure of a prior marine loss

such as Mr. Melone's. Disclosure of a prior marine loss, other than an "act of God" or where another person's fault or neglect caused the loss, necessarily causes us to be even more cautious and at the very least to charge a higher premium regardless of the type of vessel to be insured and regardless of where the proposed vessel is to be kept. Any prior loss activity always causes us to charge a higher premium even in the event that we had been satisfied as to added security measures.

47. As stated herein, T.L. Dallas (Special Risks) Ltd.'s agreement to insure this 2005 36 ft Yellow Fin power vessel, and the premium for the Quotation that was issued by T.L. Dallas (Special Risks) Ltd., were all based upon the information that was submitted to us by the brokers working on behalf of Yellow Fin 36 LLC.

48. When any Quotation request or application comes into our facility for review, we have no ability to judge the nature of the risk being presented by any means other than the information disclosed therein. Accordingly, we rely completely on the compliance by the Assureds and brokers acting on their behalf with the admittedly onerous but critical obligations imposed by the principles of *uberimmae fidei* or "utmost good faith."

FURTHER YOUR AFFIANT SAYETH NAUGHT

 

 

 

 

_____
B.A. USHER

17

Sworn before me this _____
day of January 2010 at Ilkley
in the county of West Yorkshire


_____
A solicitor/commissioner for oaths