UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREAT LAKES REINSURANCE (UK)
PLC,

      Plaintiff,

v.                         CASE NO.   8:08-CV-1851-T-17TBM

YELLOW FIN 36 LLC,
et al.,

      Defendants.

_____/


ORDER

This cause is before the Court on:


Dkt. 28   Motion for Summary Judgment (Defendants)
Dkt. 30   Deposition - Luria
Dkt. 31   Deposition - McNelis
Dkt. 32   Deposition - Nero
Dkt. 33   Deposition - Usher
Dkt. 34   Deposition - Jones
Dkt. 35   Deposition - Melone
Dkt. 36   Motion for Summary Judgment (Plaintiff)
Dkt. 39   Statement of Undisputed Facts
Dkt. 40   Notice - Exhibits
Dkt. 43   Opposition Memorandum
Dkt. 44   Affidavit - Gilhooly
Dkt. 45   Affidavit - Usher
Dkt. 46   Opposition
Dkt. 48   Unsworn Affidavit (McNelis)
Dkt. 49   Reply


ORDER

The Complaint (Dkt. 1) of Great Lakes Reinsurance (UK) PLC
includes Count I, for declaratory judgment that, under theft
exclusion (k) of marine insurance Policy No. 200/658/107786, no
payment is due to Defendants, owners of the 2005 36 ft. Yellow

Case No. 8:08-CV-1851-T-17TBM

Fin power vessel insured under the terms of that policy, and
Count II, for declaratory judgment that Policy No. 200/658/107786
is void <u>ab initio</u> or may be rescinded based on Defendants'
misrepresentations and/or failure to disclose material facts as
to Defendants' prior history of marine losses.  Plaintiff seeks a
declaratory judgment that: 1) the relationship of insurer and
insured does not exist between Plaintiff and Defendants as to the
alleged theft of subject vessel on June 14, 2008; 2) declaring
that Policy No. 200/658/107786 does not afford coverage to
Defendants for the alleged theft of the vessel on June 14, 2008;
3) declaring that coverage for the alleged theft of the vessel on
June 14, 2008 is excluded under the subject Policy; and 4)
declaring that Defendants' misrepresentations and/or failure to
disclose material facts rendered Policy No. 200/658/107786 void
<u>ab initio</u> and allows Plaintiff to rescind the policy of marine
insurance, and any other appropriate relief.

     Defendants have brought a Counterclaim for breach of
contract for Plaintiff's denial of coverage for Defendants' claim
for losses for the theft of the vessel on June 14, 2008 (Dkt.
17).  Defendants seek the award of compensatory damages of
$200,000 for the loss of the vessel, prejudgment and postjudgment
interest, attorney's fees and court costs.

I.  Standard of Review

     Summary judgment should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law.
Fed.R.Civ.P. 56(c).

2

Case No. 8:08-CV-1851-T-17TBM

> "The plain language of Rule 56(c) mandates
> the entry of summary judgment after adequate
> time for discovery and upon motion, against a
> party who fails to make a showing sufficient
> to establish the existence of an element
> essential to that party's case, and on which
> that party will bear the burden of proof at
> trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination
of which facts are material and which facts are...irrelevant.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All
reasonable doubts about the facts and all justifiable inferences
are resolved in favor of the non-movant.  See Fitzpatrick v. City
of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is
genuine "if the evidence is such that a reasonable jury could
return a verdict for the non-moving party."  See Anderson, 477
U.S. at 248.  But, "[i]f the evidence is merely colorable...or is
not significantly probative...summary judgment may be granted."
Id. at 249-50.

II.  Statement of Facts

Plaintiff has filed a detailed Statement of Material Facts
Not in Dispute (Dkt. 39).  Defendants have provided a Statement
of Material Facts within Defendants' Motion for Summary Judgment.
Both statements are attached to this Order and incorporated by
reference.

3

Case No. 8:08-CV-1851-T-17TBM

III.  Discussion

Defendants moves for entry of summary judgment on
Defendants' Counterclaim for breach of contract (Dkt. 28).
Plaintiff opposes Defendants' Motion.

Plaintiff Great Lakes Reinsurance (UK) PLC moves for summary
judgment on Count II of the Complaint.  Plaintiff seeks the entry
of summary judgment declaring that the subject policy of marine
insurance was void ab initio based on Defendants' alleged
misrepresentations and/or failure to disclose prior marine losses
on the application for insurance.

Plaintiff Great Lakes Reinsurance (UK) PLC states that
Plaintiff has not moved for entry of summary judgment as to Count
I due to the presence of a material factual dispute as to whether
the vessel was "situate in a locked and fenced enclosure" at the
time of the alleged theft on June 14, 2008.

A.  Choice of Law

Defendants argue that Florida law applies as to the issue of
exclusionary clause (k), and the federal maritime doctrine of
uberrimae fidei governs the issue of whether a
misrepresentation/failure to disclose in an application for
marine insurance is material for purposes of voiding the
contract.

Plaintiff Great Lakes Reinsurance (UK) PLC argues that New
York law applies as to the issue of exclusionary clause (k),

4

Case No. 8:08-CV-1851-T-17TBM

based on the choice of law provision within the insurance policy. Plaintiff agrees that the maritime doctrine of <u>uberrimae</u> <u>fidei</u> governs the issue of whether a misrepresentation in an application for marine insurance is material for the purpose voiding the contract.

Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable, unless the choice of law is shown to be unreasonable and unjust, or in conflict with a fundamental purpose of maritime law.  The Court recognizes that the subject insurance policy shows Plaintiff's connection with New York, in that Plaintiff's agent for service of process is in New York (Dkt. 1-5, p. 15).

After consideration, the Court concludes that substantive New York law applies as to the issue of exclusionary clause (k).

B.  Misrepresentation on Application

1.  Doctrine of <u>Uberrimae</u> <u>Fidei</u>

In <u>HIH Marine Services, Inc. v Fraser</u>, 211 F.3d 1359, 1362-1363 (11th Cir. 2000), the Eleventh Circuit Court of Appeals states:

> It is well-settled that the marine insurance
> doctrine of <u>uberrimae</u> <u>fidei</u> is the
> controlling law of this circuit.  <u>See</u>
> <u>Steelmet, Inc. v Caribe Towing Corp.</u> 747 F.2d
> 689, 695 (11th Cir. 1984); <u>Certain</u>
> <u>Underwriters</u>, 27 F.Supp.2d at 1312;
> <u>International Ship Repair and Marine Serv.,</u>
> <u>Inc. v. St. Paul Fire and Marine Ins. Co.,</u>

Case No. 8:08-CV-1851-T-17TBM

922 F.Supp. 577, 580 (M.D. Fla. 1996).
Uberrimae fidei requires that an insured
fully and voluntarily disclose to the insurer
all facts material to a calculation of the
insurance risk.  See Steelmet, 747 F.2d at
695; see also Fireman's Fund Ins. Co. v.
Wilburn Boat Co., 300 F.2d 631, 646 (5th Cir.
1962) (discussing the duty to disclose in
marine insurance law); G. Gilmore & C. Black,
The Law of Admiralty 62 (2d ed. 1975) ("[T]he
highest degree of good faith is exacted of
those entering [a marine insurance contract],
for the underwriter often has no practicable
means of checking on either the accuracy or
the sufficiency of the facts furnished him by
the assured before the risk is accepted and
the premium and conditions set."). The duty
to disclose extends to those material facts
not directly inquired into by the insurer.
See Jackson v. Leads Diamond Corp., 767
F.Supp. 268, 271 (S.D.Fla. 1991); see also
Cigna Property and Casualty Co. v. Polaris
Pictures Corp., 159 F.3d 412, 420 (9th
Cir.1998) ("Whether or not asked, an
applicant for marine insurance is bound to
reveal every fact within his knowledge that
is material to the risk.")....

Under uberrimae fidei a material
misrepresentation on an application for
marine insurance is grounds for voiding the
policy.  See Steelmet, 747 F.2d at 695 (a
misrepresentation, even if it is a result of
"mistake, accident, or forgetfulness, is
attended with the rigorous consequences that
the policy never attaches and is void"
(quoting Wilburn Boat Co., 300 F.2d at 646)).
A misrepresentation is material if "it might
have a bearing on the risk to be assumed by
the insurer." Northfield Insurance Co. v.
Barlow, 983 F.Supp. 1376, 1380 (N.D.
Fla.1997); see also Kilpatrick Marine Piling
v. Fireman's Fund Ins. Co., 795 F.2d 940,
942-43 (11th Cir. 1986) (materiality is "that
which could possibly influence the mind of a

6

Case No. 8:08-CV-1851-T-17TBM

> prudent and intelligent insurer in
> determining whether he would accept the risk").

The Court notes that the subject policy provides, in
Section 9:

> m)   This contract is null and void in the event of
> nondisclosure or misrepresentation of a fact material
> to our acceptance or continuance of this insurance.  No
> action or inaction by us shall be deemed a waiver of
> this provision.

The above provision shows that the parties intended
uberrimae fidei to apply to the contract.


2.  Defendants' Prior Losses

A.  Loss of Fishing Pole

Defendants argue that Defendant McNelis' testimony
(Dkt. 31, p. 19) that he lost a fishing pole over ten years
before the effective date of the subject insurance policy,
and that he submitted a claim for this loss to his
homeowner's insurance policy, was truthful and correct.
Defendants argue that since the event was outside the time
period inquired into by the application, Plaintiff had no
basis to deny coverage for failure to report the loss to
Plaintiff.


When a specific question is posed on an insurance
application, the Court infers that the insurer considers the
information sought to be material.  The Court also notes
that Defendants were granted a premium credit for
Defendants' alleged ten-year history without marine losses.

Case No. 8:08-CV-1851-T-17TBM

Defendant McNelis' undisputed testimony establishes that
the above loss was outside the time period Plaintiff Great
Lakes Reinsurance (UK) PLC considered material.  The Court
concludes that the above loss cannot support Plaintiff's
decision to void the insurance policy.


B.   Temporary Loss of Vessel


Plaintiff argues that the misrepresentation or
nondisclosure of Defendant Melone's prior history of a
marine loss on the application for marine insurance voids
the marine insurance policy issued to Defendants.
Plaintiff argues that Defendants and/or their brokers
misrepresented or misled the underwriters concerning
circumstances critical to the underwriting decision.
Plaintiff argues that disclosure of Defendant Melone's
marine loss to Plaintiff would have resulted in the issuance
of a marine insurance policy at a higher premium than that
paid by Defendants, and therefore Plaintiff has established
the materiality of the misrepresentation or nondisclosure.


Defendants argue that Defendant Melone's temporary loss
of possession of his Dorado vessel does not constitute a
"marine loss."  Defendants argues that the temporary loss of
the vessel did not involve Defendant Melone as an "operator"
of the vessel, Defendant Melone did not experience any
financial loss for which his insurance carrier could have
been liable, and there is no evidence to establish that the
vessel was actually stolen.

8

Case No. 8:08-CV-1851-T-17TBM

1.  Materiality


      Under federal maritime law, materiality is a broad
concept.  "[M]ateriality" is defined as "that which could
possibly influence the mind of a prudent and intelligent
insurer in determining whether he would accept the risk."
Northfield Insurance Co. v. Barlow, 983 F.Supp. 1376, 1379
(N.D. Fla. 1997) (quoting Kilpatrick Marine Piling v.
Fireman's Fund Ins. Co., 795 F.2d at 942-43).  In the
context of marine insurance, "concealment" is the failure to
disclose "any material fact or circumstance in relation to
the subject matter of the contract which may increase the
liability to loss, or affect the risk assumed, and which is,
in fact or law, within or ought to be within, the knowledge
of one party, and of which the other party has no actual or
presumptive knowledge."  Steelmet v. Caribe Towing Corp.,,
747 F.2d 689, 695 (1984).


      "Marine loss history" is a fact material to the risk
assumed in providing insurance.  All Underwriters at Lloyd's
(London) Subscribing to Policy No. 200-451-7275 v. Kenney,
986 F.Supp. 1384 (S.D. Fla. 1997)(citing Certain
Underwriters at Lloyd's v. Montford, 52 F.3d 219 (9th Cir.
1995)).  In this case, Plaintiff has provided the affidavit
and deposition testimony of Beric Usher to establish that if
Defendants' marine loss history had been disclosed,
Plaintiff Great Lakes would have charged a higher premium.
(Dkt. 45, pp. 12-13).


9

Case No. 8:08-CV-1851-T-17TBM

   Defendants argue that the disappearance of a vessel
from its mooring under unexplained circumstances and the
recovery of the undamaged vessel the next day is not a
"marine loss" that Defendants were required to disclose.


   The Court notes that, after Defendants submitted
Defendants' claim for the loss of their vessel in 2008,
Plaintiff sent an investigator to interview each Defendant.
An investigator interviewed Defendant Melone and recorded
his statement.   The statement was shown to Defendant Melone
during his deposition, and Defendant Melone was questioned
about the statement:

        Q.   On June 23, 2008—

        A.   Yep.

        Q.   -did you give a recorded statement to a
        gentleman named Sylvio Bueno of Nautilus
        Investigations?

        A.  Yes, sir.

        Q.  And did Mr. Bueno ask you whether you had
        had any prior marine losses?

        A.   Um—

        MR. WITTMER: Object to the form.   I think
        -well, you can answer it.

        Q.   Go ahead and answer, please.

Case No. 8:08-CV-1851-T-17TBM

    A.   I believe he did, and I believe I
answered no.

    Q.   Well, let me read you what your answer
is.
    "Um, well, I did, but never did a-you know,
yes, somebody stole my 23 foot Dorado."
    Did you own a 23 foot Dorado at some point?

    A.   I still do, yes.

    Q.   Was that vessel stolen?


    MR. WITTMER: Objection, form, lack of
predicate, speculation, fails the best
evidence rule.
    You can answer.

    THE DEPONENT: Um, at that time I owned that
Dorado with a partner.

    Q.   Was it stolen?

    A.   At that time we might have believed it
was stolen, but we have no evidence it was
stolen.   We now that are--looking back and
speaking with my ex-partner on the boat, it
could have been a-a whole different set of
circumstances.

    Q.   Well, let me read what you-again, the
full statement that you gave to Mr. Bueno.
    You said, "Um, well, I did, but never did
a-you know, yes, somebody stole my 23 foot
Dorado.   They lowered it off the lift, and I
guess they never got the boat started or
found the on/off switch or whatever the case

Case No. 8:08-CV-1851-T-17TBM

                may be.  They couldn't get the boat started,
and the next morning they found it wedged up
underneath the Siesta Key Bridge.  One of the
neighbors that lives next to the bridge is a
friend of mine, and he realized the boat was
mine, called me up, and we went down and took
care of the problem."

Is that what you told Mr. Bueno?

MR. WITTMER: Objection, speculation, um,
predicate, mischaracterizes or misstates, um,
objection to the form of the question, and
violates the best evidence rule.

You can answer if you can.

THE DEPONENT: Um, the location of-

Q.  My question is is that what you told Mr.
Bueno?

A.  Yes.

Q.  Okay.  So--then he asked you when this
was, and you said it was five years ago, six
years ago.

Is that correct?  Is that when the incident
occurred?

A.  I believe so.

(Dkt. 35, Melone Deposition, pp. 5-6).

Defendant Melone further testified:

Q.  This is the neighbor that alerted you to
the fact that the boat was floating next to
Siesta Key Bridge?

12

Case No. 8:08-CV-1851-T-17TBM

A.  Exactly.

Q.  Okay.

A.  Um, went down there, looked at the boat, met my partner at the boat, saw no damage on the boat, nothing out of the ordinary on the boat, um, brought the boat home.

Q.  All right.  You told Mr. Bueno, "There was probably $1,500 to a couple thousand dollars of damage done to the-to the vehicle"--

A.  Um-hum.

Q.  -"and we just at that point decided not to do a claim because our deductible was somewhere around the same number and it didn't matter."

So there was damage?

A.  Well, Mr. Bueno was shutting his tape recorder on and off multiple times.  I can't remember just how many, but multiples times.

Q.  My question to you-

MR. WITTMER: No, let him-let him finish, please.

MR. GOLDMAN: Okay.

THE DEPONENT: Multiple times and was not letting-not recording the answers that I think that he didn't want to hear from-from what I understood, so...

13

Case No. 8:08-CV-1851-T-17TBM

Q. Did you tell Mr. Bueno that the vessel sustained 1,500 to $2,000 worth of damage?

A. Mr. Bueno-

Q. Did you tell him that?

A. Mr. Bueno led me into saying that there was no damage. I said there was no damage. He said, "There was not one damage from being caught up underneath the bridge?" I said, "It might have had a scratch or two." He said, "If you had to put a number on it?" I said, "I don't know. There was a scratch on the stainless steel steering wheel. Are you telling me I need to buy a new stainless steel steering wheel? If you're telling me that, it could have been a thousand dollars."

Q. Did you tell-

A. But there was no-there was no-we did not fix anything on the boat.

Q. Did you tell Mr. Bueno that there was $1,500 to $2,000 worth of damage done to the vessel?

A. Because he kept making me put a number on what I had thought that the damage could have been.

Q. So again, my question is for whatever reason, however it got there, did you tell Mr. Bueno that the vessel had between 1,500 and $2,000 worth of damage?

A. Yes.

14

Case No. 8:08-CV-1851-T-17TBM

Q. Okay. You didn't put in an insurance
claim on it, though?

A. No.

Q. Okay. And was the reason you didn't put
in an insurance claim was because that would
just about equal what the deductible was on
the policy?

A. No, because when we found the boat, there
was no damage. There was no reason to put in
an insurance claim. Like I said, he shut off
his tape recorder multiple times, and he kept
going into well, there had to be some damage,
and I kept saying there wasn't any. He said,
"There was nothing at all?" I said-I said,
"Maybe a scratch here or two that me and my
partner might have seen, but to the best of
my knowledge, you know, the boat's two or
three years old, you know, we-we saw nothing
wrong."

Q. Did you tell Mr. Bueno, "We just at that
point decided not to do a claim because our
deductible was somewhere right around the
same number and it didn't matter"?

A. And again-

Q. Is that what you told him?

A. I-I don't recall.

Q. Do you want to look at your statement?

A. If you want me to.

15

Case No. 8:08-CV-1851-T-17TBM

Q.  Please do.

MR. WITTMER: No, I'm-and I'm just going to
raise the same objections, speculation,
predicate, violates best evidence rule.  That
statement is not the complete statement.

THE DEPONENT: Absolutely not the complete
statement.

Q.  Is that what it says here?

A.  Um...
Q.  Read it into the record again if you
want.

A. Show me which one it was now.  "There was
probably $1,500 to a couple of thousand
dollars of damage done to the-to the vehicle,
and we just at that point decided to--not to
do a claim because our deductible was
somewhere right around the same number, and
it didn't matter."

From my recollection, I remember Mr. Bueno
putting those words in my mouth before he
would tape-tape record me again, and he was
leading me into that conversation to try to
put a number on some sort of damage that
happened to the boat, and when I kept telling
him there was no damage, in fact, I don't
even believe-we don't even know if the boat
was actually stolen.  We don't know if a
rogue wave lifted it off the lift.  I don't
know if one of my partner's children turned
the lift on and walked away.  I don't know if
the last person the day before did not shut
the lift off when he walked into the house
which would incur the lift to go up, go back
down, boat float off, and that's-

16

Case No. 8:08-CV-1851-T-17TBM

(Dkt. 35, pp. 6-7).

Defendant Melone further testified:

Q.  And your testimony now is that there was
no damage, but you told Mr. Bueno that there
was 1,500 to $2,000 in damage?

A.  My testimony at that time was that there
was no damage, and Mr. Bueno proceeded to
shut off his tape recorder again and go into
telling me, "Well there had to be some damage
if it touched the bridge or it banged up
against the bridge one or twice or
something?"  I said, "You know, again, if
you're trying to get me to put a number on
something, I-I don't know what to tell you
except we noticed a scratch on the stainless
steel steering wheel on the tower of the boat
while it must have banged up against the
bridge.  I don't know if that damage came
from that particular time or not, but that
was the only thing we could see as being
damaged."

Q.  All right.  And did you ever get that
damage repaired?

A.  No.

Q.  Why not?

A.  Because it was insignificant, and I don't
even really know if it happened at that time.
It could have happened before.  We bought the
boat used.

17

Case No. 8:08-CV-1851-T-17TBM

The insurance application asks: "Was any operator
involved in a marine loss in the last ten years (Insured or
not)? (Dkt. 1-2). Defendants answered this question "No."
For the purpose of determining whether the response to this
question is a misrepresentation, the Court needs to know
whether any Defendant sustained a marine loss within the ten
years prior to the application in April, 2006.   Aside from
the unexplained disappearance of the entire vessel, damage
to a vessel qualifies as a marine loss.   Even if the
application question is ambiguous, <u>uberrimae</u> <u>fidei</u> requires
the disclosure of all marine losses during the relevant time
period.   Therefore, as to the incident in 2002 or 2003, the
issue of whether Defendant Melone's vessel sustained damage
in that incident is a critical issue.   If there was damage
to Defendant Melone's vessel at that time, insured or not,
and repaired or not, Defendants were required to disclose
it.   Defendant Melone testified that he and his partner
looked at the damage and decided not to pursue an insurance
claim.   This is circumstantial evidence that both believed
that the vessel was damaged in the incident.   Defendant
Melone now denies that the vessel was damaged in the
incident.   After consideration, the Court concludes that
this issue should be resolved by a jury.


As to the issue of a misrepresentation which would
justify Plaintiff's decision to void the subject insurance
policy, Defendants' Motion for Summary Judgment (Dkt. 28)
and Plaintiff's Motion for Summary Judgment (Dkt. 36) are
**denied.**

18

Case No. 8:08-CV-1851-T-17TBM

C.   Theft Exclusion


After consideration, the Court finds that there are material factual disputes as to whether the vessel "was situate in a locked and fenced enclosure."  The Court therefore **denies** Defendants' Motion for Summary Judgment as to this issue.  Accordingly, it is


**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 28) is **denied** and Plaintiff's Motion for Summary Judgment is **denied**.  This case will be set for trial on the next available trial calendar.


**DONE** and **ORDERED** in Chambers, in Tampa, Florida on this 26th day of August, 2010.




ELIZABETH A. KOVACHEVICH
United States District Judge


Copies to:
All parties and counsel of record

19